## SANDS v. McNEILL.

(Court of Appeals of District of Columbia. Submitted April 11, 1922. Decided June 5, 1922.)

### No. 3748.

1. **Attorney and client** ⬅️166(2)—**Evidence held to sustain recovery against one member of syndicate for services rendered to syndicate.**

   Evidence that an attorney, at the request of one member of a syndicate, had rendered services in the formation of the syndicate and the purchase of property for it, is sufficient to sustain a verdict authorizing recovery for such services against the member requesting them, though the attorney testified the services were rendered for the syndicate, while defendant's testimony showed that the member requesting the services had no authority from the other members of the syndicate to do so.

2. **Appeal and error** ⬅️1048(6)—**Refusal to permit cross-examination of plaintiff before letter was introduced in evidence held not prejudicial.**

   The refusal to permit defendant to cross-examine plaintiff concerning the contents of a letter before the letter was placed in evidence by defendant was not prejudicial, where it is not shown to what particular part or parts of the letter the proposed cross-examination referred, and when the letter was subsequently introduced no attempt was then made to recall the plaintiff for further cross-examination.

   Smyth, Chief Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Assumpsit by Robert H. McNeill against Oliver J. Sands and another, to recover for services rendered. Judgment for plaintiff against the named defendant, and that defendant appeals. Affirmed.

J. S. Easby-Smith, R. B. Fleharty, and David A. Pine, all of Washington, D. C., for appellant.

Dan Thew Wright and Philip Ershler, both of Washington, D. C., for appellee.

ROBB, Associate Justice. Appeal from a judgment for $5,000 in the Supreme Court of the District in an action of assumpsit for services alleged to have been rendered by the appellee, McNeill, plain-

tiff below, to the appellant, Sands, and his codefendant below, Harry D. Eichelberger, in connection with the acquisition of the old Arlington Hotel site.

It is first contended that the evidence "appearing in the whole case" was insufficient to support the verdict and judgment. The declaration alleges that the plaintiff is an attorney at law, and that "the defendants employed plaintiff in and about the acquisition by defendants, for themselves and other persons, to the plaintiff unknown, of certain real estate, * * * commonly known as the Arlington Hotel property"; that in pursuance of the employment "plaintiff rendered to defendants services of great value, including numerous consultations, the giving of professional advice by plaintiff to defendants, and the actual purchase by plaintiff for and on behalf of the defendants of the property aforesaid, for the sum of eight hundred and forty-seven thousand (847,000) dollars."

In his bill of particulars plaintiff alleges that he aided the defendants, at their request, in working out plans and arrangements for organizing a syndicate to buy the property, and attended the first sale to bid in the property for the defendants for. $850,000; that a difficulty arose as to the cash deposit, resulting in a second sale; that subsequent to the first sale, "at the request, by telegraph from the defendant Sands, from New York City, N. Y.," plaintiff undertook to secure an agreement whereby the terms of the bid might be complied with, but was unable to do so; that plaintiff advised defendants of this, and thereafter "they were enabled to and did negotiate a new syndicate agreement, in which were included some persons first interested, as well as some new members." Thereafter defendants returned to Washington "with a view to bidding upon and becoming purchasers of said Arlington Hotel property" at the second sale, and, on arriving in Washington, "immediately sent for plaintiff to meet them at the Powhatan Hotel * * * for a conference on the subject of said proposed purchase"; that this conference was held, and, as a result, "plaintiff was authorized and instructed to attend said sale as the representative of the defendants, and was authorized to bid for said property," and was intrusted with the sum of $50,000 with which to make a deposit, should he be the successful bidder; that plaintiff attended the sale with the defendants, and bid off the property for the sum named in the declaration; that subsequently plaintiff aided the defendants in closing the legal details of the purchase, resulting in the conveyance of the property to them or their assigns.

[1] Plaintiff's direct evidence tended to support the averments of his declaration, and was not inconsistent with his bill of particulars. He saw Sands at the Powhatan Hotel, as alleged, and was authorized by him to bid in the property. He did bid in the property, in Sands' presence, and handed the auctioneer a check for $50,000, which had been given him for that purpose. Prior to that, in response to a telegram from Sands, he had attempted to bring about the consummation of the first sale.

Sands, testifying for the defendants, admitted sending the telegram and meeting plaintiff at the Powhatan Hotel, and that plaintiff had

bid in the property as stated by him, but contended that plaintiff was permitted to do this, so as not to be "embarrassed in the eyes of his friends"; the first sale having been abortive. Sands was positive that he had no authority from his associates to employ any one. In addition, there were introduced by defendants several letters written by plaintiff to Sands, in one of which, under date of April 9, 1914, plaintiff referred to the telegram sent him by Sands and said:

"If anything were needed to convince you that I was then acting for the syndicate that afterwards bought the property at the second sale, your telegram would seem conclusive on that point."

In a letter dated May 5, 1914, written by Sands to plaintiff, and put in evidence by the defendants, Sands, in speaking of the syndicate, said:

"The owners did not know you, nor did they authorize your employment."

In the declaration, as well as in the bill of particulars, the claim is against the defendants as individuals, for services performed for them, and the evidence as a whole warranted the conclusion that such was the nature of the services actually performed. Sands himself testified, as already noted, that he was not authorized by the syndicate to employ any one, from which it necessarily follows that, if he employed plaintiff, he was acting for himself or individually. While plaintiff, in his letter of April 9, 1914, indicates that he then was of the view that he had acted for the syndicate, this attitude was not necessarily inconsistent with the evidence as to the actual relationship, because admittedly others were interested in the purchase. Plaintiff well may have thought that, through Sands, he was representing the syndicate, although acting for Sands alone. At all events, the other evidence in the case, including the testimony of Sands, tended to support the averments and theory of the declaration, and, notwithstanding this letter, warranted the jury in finding for the plaintiff.

[2] It is assigned as error that the court refused to permit the cross-examination of the plaintiff concerning the contents of the letter of April 9, 1914, before that letter had been placed in evidence by the defendant. There are two sufficient answers to this contention: First, that the record is silent as to the particular part or parts of the letter defendant had in mind, so that we are unable to say that defendant was prejudiced by the court's ruling; and, second, that the letter subsequently was introduced in evidence by the defendants and read to the jury, and no attempt then was made to recall the plaintiff for further cross-examination. That defendant suffered no prejudice is too apparent to require further argument.

It is next contended that the court, in its charge, should have limited recovery to professional services, as requested by defendant. But we agree with the trial court that there is no such limitation in the terms of the declaration, already set out.

We have carefully considered the other points raised, and, finding no error in the record, affirm the judgment, with costs.

Affirmed.

SMYTH, Chief Justice, dissents.